# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| RICHARD JOHN GEISE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04-3532-CV-S-RED-P |
| ) | |
| BILL HEDRICK,, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
DISMISSING PLAINTIFF'S RETALIATION CLAIMS WITHOUT PREJUDICE,
DENYING PLAINTIFF'S MOTION TO JOIN ADDITIONAL DEFENDANTS,
AND DISMISSING CASE**

Plaintiff, who currently is confined at the United States Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri, filed this case pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), seeking relief from alleged violations of his federally protected right to be free from cruel and unusual punishment arising from defendants' alleged physical abuse while removing him from his cell on May 13, 2003, and from the retaliation for filing grievances related to the incident.

Originally, plaintiff named former MCFP Warden Bill Hedrick, Lt. Houck, Officer Oaks, Officer Garrison, and Officer Moorefield[1] as defendants. Subsequently, plaintiff was granted leave to substitute Officer Davidson for Officer Oaks (Doc. No. 17). All current defendants have filed motions for summary judgment (Doc. Nos. 15, 30, and 38). Plaintiff has responded to defendants' Moorefield, Houck, and

---

[1] Stana Moorefield now is known as Stana Mead.

Garrison's motion for summary judgment (Doc. Nos. 18 and 21), but he has failed to respond to defendant Davidson's and defendant Hedrick's motions for summary judgment as ordered. Defendant Oaks never has been served with summons and a copy of the complaint in this case. Although plaintiff has filed a motion to dismiss defendant Houck and substitute Lt. William Steele for defendant Houck and to add Officer Brandon Cantrell and Officer William Copeland as defendants (Doc. No. 26), defendants oppose plaintiff's motion (Doc. No. 33). Defendants Moorefield, Houck, Davidson, and Garrison also have filed a reply to plaintiff's responses (Doc. No. 31).

## **Summary Judgment**

Pursuant to FED. R. CIV. P. 56(c), a moving party is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986); Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588-589 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). "The inquiry performed is . . . [whether] . . . there are genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A party opposing a motion for summary judgment, however, "may not rest upon the mere allegations. . . of his pleadings, but. . . by affidavits. . . must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment,

2

if appropriate, shall be entered against him." Fed. R. Civ. P. 56(e).

## Summary of Facts

Plaintiff alleged in his complaint (Doc. No. 1) that defendants Hedrick, Houck, Oaks, Garrison, and Moorefield violated his right to be free from cruel and unusual punishment when they physically abused him while removing him from his cell on May 13, 2003. In his complaint, plaintiff alleges that Lt. Kevin Houck jammed his thumb into plaintiff's right jawbone and ordered other officers to drop plaintiff 4-6 feet into a wheelchair. Plaintiff further alleges that defendants Mead and Houck ran plaintiff's wheelchair into a railing. Doc. No. 1, ¶ IX A.6. Plaintiff also asserted that he is being retaliated against for filing grievances related to the incident. Plaintiff contends that, after he filed a grievance, he was given a "bogus incident report," placed in disciplinary segregation, lost his good conduct time, and denied access to his legal paperwork and the law library. He seeks $30,000.00 in actual and punitive damages from each named defendant.

Subsequently, plaintiff was granted leave to substitute defendant Davidson for defendant Oaks (Doc. No. 17). Although plaintiff has filed a motion to dismiss defendant Houck and add several other defendants (Lt. William Steele, Officer Brandon Cantrell, and Officer William Copeland)(Doc. No. 26), the previously named defendants[2] have filed motions for summary judgment (Doc. Nos. 15, 30, and 38) and contend that the joinder of additional defendants is unnecessary because it would not alter the uncontroverted fact that plaintiff has failed to establish an injury as a result of the events alleged in his complaint (Doc. No. 33).

---

[2]Only defendant Oaks has never been served and has not filed a motion for summary judgment.

3

Plaintiff currently is serving a 92-month term of imprisonment for the crime of bank robbery with a current projected release date of February 22, 2009. Doc. No. 15, Exhibit 1, ¶ 2. While he has been incarcerated, plaintiff has been disciplined numerous times for conduct violations and has been confined to administrative detention and disciplinary segregation on multiple occasions. Id. at ¶ 5. On May 13, 2003, at 1:05 p.m., plaintiff was moved from the mental health unit (House A) to the special housing unit (House Z) where inmates confined in administrative detention or disciplinary segregation are housed. Id. Lt. William Steele ordered plaintiff to submit to handcuffs, which plaintiff did. Officer Jeff Davidson assisted plaintiff as he walked to a wheelchair so that he could be seated in it and transported to the Special Housing Unit. Doc. No. 30, Exhibit 1, pp. 5. Officers Stana Mead, Brandon Cantrell, and William Copeland also were involved in transferring plaintiff to a different housing unit on May 13, 2003. Doc. No. 15, Exhibit 1, ¶ 9. Plaintiff did not file an administrative remedy request concerning the May 13, 2003, incident until August 4, 2003, at which time his complaint about the excessive use of force was referred to the Office of Internal Affairs for the Federal Bureau of Prisons for investigation. Doc. No. 15, Exhibit 1, ¶ 8.

At 3:20 p.m. on May 13, 2003, plaintiff was examined by Dr. Mark Pearson and failed to complain about any physical injuries associated with the use of force. Doc. No. 15, Exhibit 1, Attachment E. In fact, plaintiff never requested medical care or treatment from Dr. Pearson for any injuries following the alleged use of excessive force. Doc. No. 15, Exhibit 2, ¶ 4. Dr. Pearson believes that, given plaintiff's serious spinal problems existing prior to May 13, 2003, plaintiff would have sustained some obvious trauma or objective evidence of a temporary or permanent physical injury if the conduct attributed to defendants actually had occurred. Doc. No. 15, Exhibit 1, Attachment F; Exhibit 2, ¶ 6. Dr. Pearson never has

observed any physical injuries from the conduct attributed to defendants in plaintiff's complaint, and no specialists have concluded that plaintiff sustained any traumatic injuries that occurred on May 13, 2003. Doc. No. 15, Exhibit 2, ¶ 7.

Lt. Houck states under oath that he was not involved in the transfer of plaintiff to a different unit on May 13, 2003, and did not participate with other defendants in the use of excessive force against plaintiff on May 13, 2003. He also denies under oath directly or indirectly authorizing any other defendants to use excessive force against plaintiff and denies directly or indirectly causing plaintiff extreme pain or suffering on May 13, 2003. Doc. No. 15, Exhibit 3, ¶ 3.

Although Stana Moorefield (Mead) was involved in the transfer of plaintiff on May 13, 2003, she denies under oath that she was directly or indirectly involved in the use of force against plaintiff on May 13, 2003. An investigation conducted after the incident described in plaintiff's complaint concluded that no immediate or calculated use of force occurred that involved plaintiff on that day. Doc. No. 15, Exhibit 4, ¶ 3; Exhibit 1, ¶ 9.

William Garrison states under oath that he never had any direct involvement in the matters described in the complaint and that he did not assist in removing plaintiff from his cell or being present at the transfer. Doc. No. 15, Exhibit 5, ¶ 3.

Officer Davidson contends that, because plaintiff was cooperative in the transfer, no emergency or calculated use of force was necessary and did not occur. Davidson states under oath that he never lifted plaintiff off the ground and never dropped him into a wheelchair, but merely assisted plaintiff in walking to the wheelchair. Davidson also states under oath that he never acted willfully, maliciously, or sadistically in an effort to cause plaintiff harm on May 13, 2003. Doc. No. 30, Exhibit 1, ¶ 3.

Bill Hedrick states under oath that he was employed as the Warden of the USMCFP on May 13, 2003, but that he was not involved in the transfer of plaintiff to a different unit on that date and that he never, directly or indirectly, authorized any other defendants to use excessive force against plaintiff or directly or indirectly cause plaintiff extreme pain or suffering on May 13, 2003. Doc. No. 38, Exhibit 1, ¶'s 3 and 4. After becoming aware of plaintiff's allegations on August 4, 2003, Hedrick states that he requested an independent investigation of plaintiff's claims which established that a violation of plaintiff's rights had not occurred. Doc. No. 38, Exhibit 1, ¶ 5.

### Defendants Hedrick, Houck, and Garrison

Defendants Hedrick, Houck, and Garrison were not present and were not involved in plaintiff's transfer on May 13, 2003; therefore, they did not cause or participate in the alleged violations of plaintiff's Eighth Amendment rights. Although defendants Hedrick and Houck were supervisors of the other defendants, they were not personally involved in the alleged violations, and a Bivens action cannot be premised on respondeat superior liability. Eddy v. Keohane, 242 F.3d 374, 2000 WL 1742086, **1 (8th Cir. 2000); Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998). Defendants Hedrick's, Houck's, and Garrison's motions for summary judgment will be granted as to plaintiff's Eighth Amendment claims.[3]

Although none of the defendants have addressed plaintiff's allegations of retaliation, plaintiff's retaliation claims will be dismissed without prejudice for plaintiff's failure to name any specific defendants

---

[3]Defendants stated in the introductory paragraph to their motion for summary judgment that they are entitled to qualified immunity, but they did not address a qualified immunity defense in the body of their motion for summary judgment. Doc. No. 15, p. 1.

6

in relation to those claims. If plaintiff seeks to litigate his retaliation claims, he may do so in a separate case in which he specifically names the persons involved in the alleged violations of his federally protected rights and for which he is responsible for paying a separate $250.00 filing fee. Plaintiff also must file any such separate case within the applicable statute of limitations.

### Defendants Moorefield (Mead) and Davidson

Although defendants Moorefield (Mead) and Davidson were involved in plaintiff's transfer on May 13, 2003, from the mental ward at the USMCFP to the Special Housing Unit at USMCFP, they contend that, because plaintiff was cooperative in the transfer, no emergency or calculated use of force was necessary and did not occur; therefore, plaintiff was not dropped into his wheelchair and did not sustain any injuries from the transfer. Doc. No. 30, p. 2. Both defendants contend that plaintiff has failed to state an Eighth Amendment claim because the extent of force used was insufficient to support such a claim and because plaintiff failed to sustain a physical injury. Doc. No. 15, pp. 7-9; Doc. No. 30, p. 3.

Officer Moorefield (Mead) specifically denies in her affidavit, Doc. No. 15, Exhibit 4, p. 1, that she engaged in the conduct described in plaintiff's complaint (pushing plaintiff's wheelchair into the railing of the ramp while transferring plaintiff between units) and states that she was not directly or indirectly involved in any use of force incident involving plaintiff on May 13, 2003. She also specifically states under oath that the investigation performed after plaintiff filed an administrative remedy request on August 3, 2003, claiming that he had been injured as a result of excessive force used to perform the transfer on May 13, 2003, established that a violation of plaintiff's rights did not occur.

Officer Davidson states under oath in his affidavit that he never dropped plaintiff into a wheelchair

from a height of 4-6 feet because no emergency or calculated use of force occurred when plaintiff was transferred between housing units on May 13, 2003. He adds that he never lifted plaintiff off of the ground and that plaintiff never reported any injuries he sustained as a result of walking to the wheelchair or being transported by wheelchair to the Special Housing Unit. Finally, defendant Davidson states under oath that he never acted willfully, maliciously, or sadistically in an effort to cause plaintiff to be harmed on May 13, 2003. Doc. No. 30, Exhibit 1.

In response to defendants' motions for summary judgment, plaintiff contends that he only recently learned the correct identities of defendants Steele, Cantrell, and Copeland because he relied upon the report of the officer who investigated his grievance as to those personnel involved. Plaintiff states that he was not examined by Dr. Pearson on May 13, 2003, shortly after the alleged incident and that he merely had a conversation about it with Pearson on May 23, 2003, at which time Pearson "blew it off." Doc. No. 18, p. 3. Plaintiff contends that he is suing defendants in their individual capacities[4]; that more than "de minimus" force was used in extracting him from his cell and transporting him to another housing unit on May 13, 2003; that Pearson has not been his doctor for almost two years; that excessive force has been used against him on four separate occasions; that he waited four months to file a grievance about the May 13, 2003, incident because he tried to forgive defendants for their actions but decided that they were going to continue to make his life miserable; and that he should be allowed to serve Lt. William Steele, Officer Brandon Cantrell, and William Copeland so that they will be held accountable for their wrongdoings. Doc. No. 18, pp. 5-15.

---

[4]The Court concludes that plaintiff's declaration in his response to defendants' motion is sufficient to allege a claim against defendants in their individual capacities. See Doc. No. 15, p. 5.

8

In a separate response, plaintiff also states that he requested legal documents to file a <u>Bivens</u> action almost immediately after the May 13, 2003, incident, which proves the truth of his claims. Plaintiff attached a copy of his inmate request for legal material concerning cell extraction and cruel and unusual punishment. Doc. No. 21.

To prove a claim of excessive force in violation of the Eighth Amendment prohibition against cruel and unusual punishment, plaintiff must show that the force was applied maliciously and sadistically to cause harm, rather than a good faith effort to maintain or restore discipline. <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992). While allegation and demonstration of a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation. <u>Cummings v. Malone</u>, 995 F.2d 817, 822 (8th Cir. 1993) (proof of actual injury required). Moreover, the Supreme Court has held that <u>de minimus</u> use of physical force is not sufficient to recover under the Eighth Amendment unless the use of force is of the sort "repugnant to the conscience of mankind." <u>Hudson</u>, <u>supra</u> at 9-10.

Because plaintiff suffered from serious spinal problems prior to the alleged incident and because plaintiff had some sort of personal visit with Dr. Pearson shortly after the alleged incident on May 13, 2003, but did not complain about any physical injuries associated with the use of force or the use of excessive force to Pearson on that date, Pearson has stated in his affidavit and attached medical records supporting his statements that plaintiff "would have sustained some obvious trauma or objective evidence of a temporary or permanent physical injury if the conduct attributed to the defendants had actually occurred." Doc. No. 15, Exhibit 2 (Pearson Affidavit). Pearson's report of his visit with plaintiff on May 13, 2003, stated that plaintiff complained about depression from being placed in lockdown as a result of officers finding alcoholic beverages near his bed in his previous unit. Doc. No. 15, Attachment E.

9

Moreover, nothing in plaintiff's medical records attached to defendants' motion for summary judgment (Doc. No. 15, Attachment F) indicates that plaintiff has ever complained about an injury consistent with his being dropped into a wheelchair from 4-6 feet on May 13, 2003. The Court concludes that plaintiff has failed to show that he actually was injured from the alleged use of force on May 13, 2003, and, therefore, fails to state an Eighth Amendment claim. See Lawson v. Vance, 41 Fed. Appx. 24, 25 (8th Cir. July 26, 2002); White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994).

Defendants Moorefield (Mead)'s and Davidson's motions for summary judgment (Doc. Nos. 15 and 30) will be granted as to plaintiff's Eighth Amendment claims. Again, defendants have failed to address plaintiff's retaliation claims; however, plaintiff has failed to name the specific persons who retaliated against him on specific occasions. Therefore, plaintiff's retaliation claims will be dismissed, without prejudice, for failure to state a claim, and plaintiff will be directed to file a separate case if he seeks to litigate those claims within the statute of limitations.

## Plaintiff's Motion to Join and Serve Additional Defendants

For the reasons set forth in defendants' response thereto (Doc. No. 33) and for the reasons set forth in this Court's discussion of plaintiff's Eighth Amendment claims, plaintiff's motion to join and serve additional defendants Lt. William Steele, Officer Brandon Cantrell, and Officer William Copeland (Doc. No. 26) and motion for injunctive relief (Doc. No. 28) will be denied.

Accordingly, it is **ORDERED** that:

(1) defendants Houck, Moorefield (Mead), and Garrison's motion for summary judgment (Doc. No. 15) is granted, and they are severed and dismissed from this case;

(2) plaintiff's motion to join and serve additional defendants (Doc. No. 26) is denied;

(3) plaintiff's motion for injunctive relief (Doc. No. 28) is denied;

(4) defendant Davidson's motion for summary judgment (Doc. No. 30) is granted, and he is severed and dismissed from this case;

(5) defendant Hedrick's motion for summary judgment (Doc. No. 38) is granted, and he is severed and dismissed from this case;

(6) defendant Oaks is severed and dismissed as a defendant in this case;

(7) plaintiff's retaliation claims are severed and dismissed without prejudice to their reassertion in a separate case in which plaintiff names the specific persons who retaliated against him on specific occasions; and

(8) this case is dismissed with prejudice as to plaintiff's Eighth Amendment claims.

                                                */s/ Richard E. Dorr*
                                                RICHARD E. DORR
                                                UNITED STATES DISTRICT JUDGE

Springfield, Missouri,

Dated:   10/25/05  .